NEW ENGLAND DIE CO., INC. *vs.* GENERAL PRODUCTS COMPANY, INC.
GENERAL PRODUCTS COMPANY, INC. *vs.* NEW ENGLAND DIE CO., INC.

MARCH 9, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J. These two actions in assumpsit were tried together to a jury in the superior court. In one of these actions New England Die Co., Inc., hereinafter referred to as "New England," sought to recover from General Products Company, Inc., hereinafter referred to as "General," payment for the manufacture and delivery of a device to be used in the manufacture of plastic containers. In the other of these actions General sought to recover damages from New England for an alleged breach of said contract. In the action brought by New England against General the jury returned a verdict for the plaintiff in the amount of $5,595.33, and in the case brought by General against New England the jury's verdict was for the defendant. In each of these cases General has prosecuted a bill of exceptions to this court where it is now pressing an exception taken to a portion of the charge given by the court, to a denial by the court of its requests for specific instructions,

and to a ruling excluding certain evidence offered in its behalf.

It appears from the record that New England is a Massachusetts corporation having its principal place of business in the city of Taunton in that state and that General is a Rhode Island corporation engaged in the manufacture of plastic products in a plant located in the city of Central Falls. It further appears that in November 1954 the parties entered into negotiations for the manufacture by New England of a mold that was to be used by General in the production of plastic containers. There is no dispute that the device or mold contemplated by the parties was to be used in a power press and was to have a capacity to produce ten plastic containers.

Pursuant to these negotiations on November 16, 1954 New England quoted a price to General in writing, and on the following day a purchase order was issued by General and sent to New England. On November 22, 1954 New England issued a production order for the manufacture of the mold, and a copy of this order was sent to General. Thereafter the parties continued to communicate with each other as to the preparation of specifications and blueprints of the mold. In March 1955 New England delivered a mold to General which was immediately returned to New England to have certain corrections made thereon. It is not disputed that thereafter the mold was delivered to General and returned to New England several times, it appearing to be the contention of General that the mold by reason of some malfunction did not produce ten of the plastic containers on each operation of the press.

Thereafter, in August 1956, New England brought its action to recover the purchase price of the mold, and in March 1958 General brought its cross action to recover damages alleged to have resulted from the breach of the contract by New England. The issues were fully and ably tried, and a substantial amount of evidence was adduced.

Much of the evidence, however, relates to issues other than those raised by the exceptions being pressed in this court. To the extent that it is pertinent to the issues that we will consider, the evidence will be discussed later in the opinion.

On June 9, 1959 during the course of trial New England, as plaintiff, rested its case. However, on the following day, June 10, 1959, New England moved for permission to reopen its case for the purpose of introducing into evidence certain documents issued by the secretary of state to prove that as a foreign corporation it had qualified to do business in this state on June 10 pursuant to the requirement of statute, G. L. 1956, §7-2-22 et seq. General, as defendant, did not object to the admission of this evidence, but apparently in the course of arguing on its motion for a nonsuit it contended that such qualification under the pertinent statutes was required to be made prior to the institution of an action in our courts and consequently the action of New England as a plaintiff in instituting its suit was null and void. The trial court denied the motion for a nonsuit for the reason, *inter alia*, that New England by qualifying as a foreign corporation to do business in the state before it closed its case had satisfied the statutory requirements concerning such qualification of foreign corporations.

At the close of trial the trial justice in the course of his charge to the jury in substance instructed the jury that New England as a plaintiff had conclusively proved that it had qualified as a foreign corporation to do business in Rhode Island before closing its case and that therefore the issue of its nonqualification was not before the jury. General's exception numbered 28 was taken to this portion of the charge of the trial justice and will now be considered by us.

The narrow question presented to us for decision is whether under our statutes which provide that foreign corporations must qualify to do business in this state, G. L. 1956, §7-2-22 et seq., a foreign corporation that has failed

to comply therewith is barred from instituting in any of the courts of this state any action for the judicial enforcement of a contract made by it within this state. We know of no prior decision of this court on the precise issue thus presented.

The controlling statutory provision, in our opinion, is to be found in G. L. 1956, §7-2-28. That section provides penalties for failure to comply with the requirements relating to the qualification of foreign corporations and reads in pertinent part: "Such failure shall not affect the validity of any contract with such corporation, but no action at law or suit in equity shall be maintained or recovery had by any such corporation on any contract made within this state in any of the courts of this state so long as it fails to comply with the requirements of said sections."

This court has long adhered to the principle that a statute is to be construed with reference to its intended scope and to the purpose sought to be accomplished through the enactment thereof. When the language contained in a particular statute is free from ambiguity and expresses a definite and sensible meaning, that meaning is conclusively presumed to be the one which the legislature intended to convey, and in such circumstances that statute is to be interpreted literally. *Davis* v. *Lussier*, 86 R. I. 304. This court will not import ambiguity into a statute where none existed by resorting unnecessarily to the rules of statutory construction. *Weimar* v. *Newman*, 78 R. I. 221. We perceive no ambiguity in the pertinent provisions of said §7-2-28. The language employed by the legislature does not obscure the legislative intention as to the extent to which access to our courts will be withheld from foreign corporations that fail to comply with the statutory requirement that they qualify to do business in this state.

The language of the pertinent provision of §7-2-28 provides that no action "shall be maintained" by such a corporation in any of our courts "so long as" it fails to comply

with the requirement of the statute concerning qualification. When the word "maintain" in the context in which it is used is given a literal interpretation, it obviously means to continue with or to carry on such an action, that is, it implies the continuance of something that has already been commenced. There is in the language of the statute no express prohibition of the institution of such an action, nor in our opinion is such a prohibition against the institution thereof to be necessarily implied therein.

Statutory provisions are ordinarily broadened on the principle of necessary implication only where the absence of some provision would render impossible the accomplishment of the clear purposes of the legislation. However, in the instant case the purpose of the legislation, that is, the withholding of the assistance of our courts from such corporations in the enforcement of their contracts, is given full effect by prohibiting the maintenance of such actions until there is compliance with the requirement of statute. There is no necessity then to imply that the statute bars the institution of such actions. It is well settled that courts will not broaden statutory provisions by judicial interpretation unless such an interpretation is necessary to carry into effect the clear intendment thereof. *Irish* v. *Collins,* 82 R. I. 348. Whether the failure to prohibit the institution of such actions by an express provision in the statute was intentional or a matter of legislative oversight or inadvertence cannot be of concern to this court. The fact is that the legislation does not in express terms prohibit the institution of such actions, and it is not within the province of this court to insert in a statute words or language that does not appear therein except in those cases where it is plainly evident from the statute itself that the legislature intended that the statute contain such provisions. *Goldman* v. *Forcier,* 68 R. I. 291. We find in the instant statute nothing that evidences such a legislative intent.

We are constrained then to conclude that the pertinent

provisions of §7-2-28 do not operate so as to bar a foreign corporation from instituting an action ex contractu in our courts prior to compliance with the statutory requirement concerning qualification and that therefore qualification during the course of the trial of such an action constitutes compliance within the purview of the statute.

In contending for a contrary construction, General has raised a question as to the effect of the provisions of §7-2-23 on the institution of actions to enforce contracts by foreign corporations prior to compliance with the requirements of qualification. Section 7-2-23 provides in part: "Every foreign corporation as a *condition precedent* to carrying on business in this state, or to enforcing in the courts of this state any contract made within this state" shall qualify to do business in this state by paying certain fees to the treasurer and filing certain documents and certificates with the secretary of state. (italics ours) General contends that these provisions make compliance with the qualification requirements of the statute a condition precedent to foreign corporations invoking in any manner the assistance of our courts in the enforcement of their contracts including the institution of an action for that purpose.

Essentially this is an argument based upon the proposition that this legislation is to be construed strictly. If the statute were so construed, compliance with the requirements thereof would be a condition precedent not only to the enforcement of the contracts of a foreign corporation through judgment and execution but also to any resort by such a corporation to those preliminary processes of our courts that are preparatory of a proceeding to accomplish such enforcement.

This court has already considered and rejected this contention. In *Michaels-Bauer, Inc.* v. *Doughty,* 45 R. I. 510, this court considered this construction of statutes containing the provisions now contained in §7-2-23 and also in §7-2-28. At page 512 we said: "In accordance with the

policy of the court clearly shown in its decisions dealing with regulations of this nature, appearing in former enactments, the provisions of these sections in so far as they bear upon questions of pleading, evidence and court procedure should receive such liberal construction as will not unduly hamper foreign corporations doing business in this state, while not excusing strict compliance with the regulations, deemed essential by the general assembly." It is clear then that while the legislature intended that the statutory provision requiring a foreign corporation to qualify to do business within this state be construed strictly, it also intended that to the extent that the provisions thereof affected matters procedural they were to be construed liberally.

The institution of an action to enforce a contract is a court procedure within the purview of *Michaels-Bauer, Inc.* v. *Doughty, supra,* and is not subject to the condition precedent set up in said §7-2-23. Because we reach this conclusion, it is our opinion that New England, when it qualified to do business in this state during the trial of the action which it had instituted to enforce its contract, complied with the requirements of the statute concerning qualification, and there was therefore no error in the instruction given to the jury by the trial justice concerning that issue. This exception of General is overruled.

Exceptions were also taken by General to the denial by the trial justice of its request that the jury be instructed that it could find that New England made an implied warranty of fitness for a particular purpose concerning the mold and to the action of the court in instructing the jury that no question as to an implied warranty was before it. The precise language of the pertinent portion of the charge thus given was: "There is no question before you as to whether the mold would successfully make ten ice-cream containers at each shot; that is not part of this contract. There is no warranty of any kind in this contract that it will successfully perform it." The contention of General,

as we understand it, is that the trial justice found as a fact that there was no warranty and thus invaded the province of the jury.

In support of this contention General relies on the provisions of G. L. 1956, §6-3-15. It is provided therein that warranties as to the fitness of goods for a particular use or purpose are not to be implied except in certain prescribed circumstances. One of these exceptions reads as follows: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose." To prove a warranty within the contemplation of this statute, it must be established, first, that the seller was informed by the buyer of the particular use to which the article was to be put and, second, that the buyer relied on the skill and judgment of the seller. Whether such knowledge was imparted to the seller and whether the buyer was relying on the seller's skill and judgment is usually a question of fact for the jury. *Keenan* v. *Cherry & Webb,* 47 R. I. 125; *Lepore* v. *Fuscellaro,* 73 R. I. 467. According to the contention of General, error inheres in the alleged act of the trial justice in making these findings of fact and thus invading the province of the jury.

After reading the charge of the trial justice in its entirety, however, we are unable to agree that in so instructing the jury he was determining the pertinent questions of fact and was thereby erroneously invading the province of the jury. Rather it appears to us that he was instructing the jury that the issue of implied warranty was not presented by the evidence adduced and therefore was not before them for determination. In other words, in refusing to grant General's requests to charge and in making the charge that he did, he was clearly following a well-established rule

that governs trial justices in the matter of instructing juries. That rule is that the charge given to the jury must be applicable to the facts that have been adduced in evidence, *D'Angelo* v. *Director of Public Works,* 89 R. I. 267, 152 A.2d 211, and that a request for an instruction is properly denied where there is no basis for such an instruction in the evidence. *Myers* v. *Myers,* 63 R. I. 264.

The question before us is whether the state of the evidence was such as to warrant the action of the trial justice in withholding these questions from the jury. We have scrutinized the evidence carefully for the purpose of determining whether there was any evidence contained therein from which the jury could have found that General relied upon the skill and judgment of New England to manufacture a mold that would accomplish the purpose for which it was ordered. Such examination has persuaded us that there is no such evidence in the record. There was an abundance of evidence from which the jury could find that New England had information as to the use that was to be made of the mold, but the record is devoid of evidence tending to prove that pursuant to the understanding between the parties General was relying upon New England to make a mold that would produce ten containers at every operation. To the contrary, the only evidence on this point tends to prove that the agreement of the parties was that New England was to make the mold in conformity to specifications that it had prepared and had been approved by General as a result of some rather substantial negotiations between them.

We have also made a careful examination of the evidence adduced for the purpose of showing the tests that had been made of the mold after its delivery and that it would not accomplish the result sought. However, such an examination did not persuade us that such evidence would support a reasonable inference that General was relying upon New England to manufacture such a mold. Such evidence, it is

clear, was probative only of the fact that the mold delivered did not accomplish the purpose for which it was ordered, that is, it would not perform according to the purported warranty. It is without probative force, however, on the question of whether there was such a warranty by reason of reliance by General on the skill and knowledge of New England.

Exceptions were also taken by General to the exclusion by the trial justice of testimony offered to prove the knowledge of New England that the mold was to be used in a particular press. Such evidence, if admitted, would have had probative force only on the question whether knowledge had been imparted to New England concerning the use to which the mold was to be put. It would be without probative force as to the reliance of General on the skill and knowledge of New England. That being so and in view of the conclusions which we have already reached, it will not be necessary for us to pass upon these exceptions.

All of the exceptions of General Products Company, Inc. in each case are overruled, and each case is remitted to the superior court for the entry of judgment on the verdict.

*Max Winograd, Marshall B. Marcus,* for appellee New England Die Co., Inc.

*Goodman, Semonoff, Gorin & Blease, Ralph P. Semonoff, Martin M. Temkin,* for appellant General Products Co., Inc.