274 A.2d 750.

GOOD WILL HOME ASSOCIATION *vs.* CHARLES O. DRAYTON, JR.

MARCH 11, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This action was brought by Good Will Home Association, a Maine corporation which operates a private school known as the Hinckley School in Hinckley,

Maine, to collect money due it from the defendant, Charles O. Drayton, Jr., as payment for the room, board, and tuition of his daughter, who attended the Hinckley School. The complaint was filed on February 26, 1970, and subsequently, on March 16, 1970, the defendant filed a motion to dismiss the complaint. Objection to the motion to dismiss was filed on April 22, 1970, and annexed thereto was an affidavit executed by the President of Good Will Home Association, along with a copy of a letter of agreement relating to payment of the arrearages due the school from Drayton. The motion was heard on May 8, 1970, by a justice of the Superior Court, who granted the motion and dismissed the action without prejudice. Thereupon the plaintiff pressed its appeal from that order to this court.

The record discloses that no testimony was adduced at the hearing to dismiss in the Superior Court and that after oral argument that court granted the motion. According to the affidavit of the President of Good Will Home Association filed with the objection to the motion to dismiss, defendant's daughter had attended Hinckley School through the academic years beginning in September 1967 through June 1968 and beginning in September 1968 through June 1969. The total expenses incurred for tuition, board, and other expenses amounted to $5,479.68, no part of which had been paid at the time of the commencement of this action.

In his affidavit the President of Good Will Home Association further deposes that to the best of his knowledge and belief marital difficulties developed between Drayton and his wife and that in the course of subsequent divorce proceedings an agreement was made between them in which Drayton agreed with his estranged wife to pay three-fourths of the outstanding arrearage of $5,479.68, which would amount to the sum of $4,109.76.

Thereafter a letter agreement was prepared, in which

the Draytons acknowledged the arrearage due the Good Will Home Association and Drayton offered, in accordance with his agreement with his estranged wife, to pay Good Will Home Association three-fourths of the arrearage. It further appears from the copy of the letter of agreement that Drayton's estranged wife agreed to pay the remaining one-fourth of the arrearage. This letter agreement, dated July 31, 1969, was thereafter sent by mail to the Good Will Home Association at Hinckley, Maine, with the signatures of Drayton and his estranged wife affixed thereto.

The letter agreement concludes with a statement addressed to the school: "Kindly note your acceptance of the arrangements herein provided by signing and returning * * *" to counsel representing Drayton. This is followed by the signatures of Drayton and his wife, and below these signatures there appears the following: "The foregoing arrangements are acceptable to Good Will Home Association." This is signed by Bradford H. Hutchins in his capacity as President of Good Will Home Association. It is not disputed that the execution of the acceptance by Good Will Home Association of the letter agreement took place in Waterville, Maine.

The record discloses in express terms that defendant's motion to dismiss was based on the provisions of G. L. 1956, §7-1.1-117, which provides, in pertinent part: "No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state, until such corporation shall have obtained a certificate of authority." We are persuaded from the absence of anything to the contrary appearing in the order of dismissal that the trial justice based his decision on his conclusion that this statute applied to the instant contract.

Apparently, however, the attention of the trial justice

was not directed to the fact that §7-1.1-117 was enacted in 1969 in amendment of prior legislation, which related to the right of foreign corporations that had failed to comply with statutory provisions requiring registration to do business within this state to maintain an action or to recover thereon in the courts of this state. Neither does it appear that his attention was directed to the fact that §7-1.1-117, the repealing statute, was not to take effect until January 2, 1970. The question that is pertinent in this court is whether the contract under consideration was subject to the provisions of §7-1.1-117, or the prior statute concerning the maintenance of actions in our courts by foreign corporations, to wit, §7-2-28.

The contract sought to be enforced by plaintiff in this case was executed in the state of Maine by its acceptance thereof in Waterville, Maine, on July 31, 1969. Having been executed prior to January 2, 1970, it comes within the purview of §7-1.1-140, which is in the nature of a savings clause and reads: "The repeal of a prior act by this chapter shall not affect any right accrued or established, or any liability or penalty incurred, under the provisions of such act, prior to the repeal thereof."

We are compelled, then, to conclude that rights accrued to plaintiff under this contract in July 1969 and that under the savings clause, because of this fact, the provisions of §7-1.1-117 are without application in the instant case. In other words, it is our opinion that the provisions of §7-2-28 are applicable here. That section provides that, where a foreign corporation is doing business in this state without complying with the statutes governing the registration thereof, certain penalties shall be imposed upon the corporation or its agents.

However, it further provides that where the corporation has been doing business in the state without being registered, that fact "* * * shall not affect the validity of any

contract with such corporation, but no action at law or suit in equity shall be maintained or recovery had by any such corporation on any contract made within this state in any of the courts of this state so long as it fails to comply with the requirements * * *" of the statutes relating to the registration of foreign corporations doing business in this state. This court has held that the provisions of this statute do not invalidate a contract nor deny such a foreign corporation the right to institute an action thereon in the courts of this state. See *New England Die Co.* v. *General Products Co.*, 92 R. I. 292, 168 A.2d 150.

In the instant case, however, we are of the opinion that the court erred in dismissing the action without prejudice because there is in the record no evidence either that the corporation was doing business in Rhode Island or that the contract was one made in this state. It seems clear that a foreign corporation not doing business in Rhode Island may in the courts of this state maintain and recover in an action on a contract which was not made within this state.

A close scrutiny of the record in the instant case discloses nothing that would sustain a reasonable inference that this corporation was doing business in Rhode Island. This fact, standing alone, serves to make §7-2-28 inapplicable in the case. It should be further noted, however, that nothing in the record would support a conclusion that the contract under which the instant action was brought was made in this state as is required, if the statute is to be applicable.

The defendant agrees that under the general rule a contract is to be considered as having been made at the place where the acceptance of the offer took place. The contract discloses on its face that it was executed by defendant in Rhode Island and sent to Maine with a specific request that plaintiff's agreement thereof be noted thereon.

The substance of defendant's argument in this case is that the contract was not accepted in Maine and that it was the return of the contract to counsel for defendant by plaintiff that completed the acceptance. From this he argues that the contract was one made in Rhode Island and, therefore, within the purview of §7-2-28. We see no merit in this argument. The fact is that the contract was executed by plaintiff by its president in Maine.

The letter agreement clearly requested plaintiff to note its acceptance of the arrangements proposed therein by signing and returning to defendant's counsel in Woonsocket "the enclosed duplicate copy of this letter." In short, the request was to return not the contract with its acceptance noted but a duplicate copy of the letter agreement that had been sent to Maine for acceptance. In the circumstances it is our conclusion that the contract was made in Maine and not in Rhode Island and that, therefore, again the provisions of §7-2-28 are not applicable to this agreement.

We have examined the argument of the defendant that his motion to dismiss should have been treated as a motion for summary judgment. This is based on the theory that the motion to dismiss put before the trial justice matters dehors the record. Whatever merit this position might have, the fact is that nothing in the record indicates that the trial justice decided the case on such new matter, and in fact his conclusion to grant the motion to dismiss "without prejudice" clearly indicates that he did not treat it as a motion for summary judgment.

The plaintiff's appeal is sustained, and the judgment appealed from is reversed.

*Strauss, Factor, Chernick & Hillman, William C. Hillman, Joseph C. Lopes,* for plaintiff.

*Tobin, Decof, LeRoy & Silverstein, Max Wistow,* for defendant.