[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an action for declaratory relief in which the plaintiff seeks to rescind a contract pursuant to which it was to lease property from the defendants for a period of ten years. The matter was heard by this Court, sitting without a jury on January 25, 1994. Judgment was reserved by the Court with leave granted to each party to submit a memorandum of law.
FACTS
This case arose from a lease agreement and related option agreement entered into by plaintiff corporation and defendants George and Dorothy Potter. The following facts were presented at trial through documentary evidence and through the testimony of George Potter and David and Joel Cohen, the owners and officers of Promet Marine Services.
Sometime prior to November 1981, Joel and David Cohen, the owners of Promet Corporation, became interested in purchasing two parcels of property located on Allens Avenue in Providence and owned by George and Dorothy Potter. Upon approaching the Potters, the Cohens learned that one of the parcels, known as the car wash parcel, was available for sale but that the other, known as the junk yard parcel, was unavailable for sale because it was subject to an $800,000 lien as a result of litigation pending against Mr. Potter. Upon learning this information, the Cohens entered into negotiations with the Potters and eventually purchased the car wash property by deed dated November 5, 1981. The Cohens also agreed to sublease the junk yard property from the then lessee. Also on that date, the Potters and the Cohens entered into a conditional option agreement which entitled Promet Corporation to purchase the junk yard property for $250,000 in the event that the pending litigation was "resolved in favor of" the Potters. The option was to be exercisable within 60 days of the sellers' notifying the buyers that the lawsuit had been resolved favorably.
The pending litigation to which the option was subject was a suit by Gibbs Oil Company which sought to recover $300,000 from the Potters. It is undisputed that this lawsuit was resolved in March, 1986, by a stipulated settlement through which the Potters were to pay $25,000 to Gibbs Oil.
Subsequent to the settlement, the sublease under which Promet was occupying the junk yard property ran out. Promet therefore began negotiations with the Potters in April, 1986 and entered into a new lease agreement on August 25, 1986. Pursuant to this agreement, Promet was to lease the property for ten years at a rent of $2,700 per month. This lease specifically referred to the option agreement previously entered into by the parties. Paragraph 18 of the lease provided that:
 In signing this 10 year lease with lessee, lessor also acknowledges that a certain purchase option for the same property, entered into with Promet Corporation on 5 November 1981, remains in effect as recorded.
Pursuant to the lease agreement, plaintiff continued to occupy the premises until August, 1992, after which it vacated the property.
On February 17, 1987, D.T.P. Inc. filed a complaint for declaratory relief in this Court, seeking to have the option declared void. In that suit, the Potters argued that the option was voided because the Gibbs Oil litigation was not resolved in their favor. The Court agreed and declared the option void. This decision was affirmed by the Supreme Court.
On October 8, 1992, plaintiff filed this suit for declaratory relief, seeking to set aside the lease agreement. The crux of this lawsuit is that plaintiff contends that it was induced to enter into the lease agreement through misrepresentations of the Potters. Plaintiff asserts that the Potters never notified it of the settlement and that, at all times prior to August, 1986, the Potters represented that the litigation was still pending. Plaintiff asserts that it entered into the lease under the false assumption that the Gibbs Oil litigation had not been resolved and that plaintiff thus hoped and intended to exercise its option to purchase the property well before the lease term expired. In effect, the lease was merely a mechanism by which plaintiff could hold the property until the option could be exercised. Plaintiff asserts that the lease clause referring to the continuing validity of the option agreement was, therefore, a material term of the lease and that, because the option agreement was actually void at the inception of the lease, the lease was void or voidable. As alternatives to its misrepresentation claim, plaintiff has alleged that defendants breached the lease, breached the covenant of good faith, and that the lease is voidable due to unilateral mistake.
The Misrepresentation Claim
A contract may be rescinded due to misrepresentation where a plaintiff shows he was induced to enter into the contract by the other party's material misrepresentations of fact. Halpert v.Rosenthal, 107 R.I. 406, 267 A.2d 730, 734 (1970). See also,Restatement (Second) of Contracts, Section 164 (1981). It does not matter if the representation was innocent or fraudulent, as long as it was material. Halpert, supra. The Restatement
defines misrepresentation as an assertion, either by words or inferable from other conduct, that is not in accordance with the facts. Restatement, supra, section 159. Non-disclosure is equivalent to an assertion in certain cases, including where a party
 knows that disclosure of the fact would correct a mistake of the other party as to the contents or effect of a writing, evidencing or embodying an agreement in whole or in part.
Restatement, section 161(c). The Restatement also indicates that a misrepresentation is material
 if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so.
Restatement, section 162.
These elements of misrepresentation are clearly proven by the evidence presented in this case. At trial, the Cohens testified that they did not become aware of the settlement until October or November of 1987. They testified that Mr. Potter never told them of the settlement prior to entering into the lease. In fact, quite to the contrary, they testified that, each time they inquired about the status of the suit prior to that time, they were told by Mr. Potter that it was still pending. Although George Potter testified that he notified the Cohens of the settlement shortly after it was reached, the Court was left with the impression that Mr. Potter was less than forthcoming in his relation of events. Although he claimed to have notified the Cohens of the settlement, he could not remember when he had done so. Furthermore, his testimony was inconsistent with his prior deposition testimony in which he stated that he thought he had a letter which would indicate that he told the Cohens about the settlement. At trial, Mr. Potter testified that he had no recollection of any such letter. Moreover, the Cohen's version of the story finds logical support in subsequent events. While Mr. Potter testified that he had no recollection of the clause in the lease regarding the option agreement, it is well established by the documentary evidence that the clause was agreed upon by the parties. The Cohens testified that, in negotiating the terms of the lease, they insisted that the clause be included. In fact, they introduced a number of memoranda regarding the clause, evidencing an attempt by the parties to arrive at language on which they could agree. These negotiations and the presence of the clause in the lease tend to support the Cohen's testimony that they had no knowledge of the settlement at the time the lease was entered into. Had both parties been aware of the settlement, it is obvious that the clause regarding the option agreement would have been unnecessary. In short, this Court finds the Cohen's version of the story to be credible.
Thus, the Court is convinced that Mr. Potter either affirmatively misrepresented that the litigation was pending, or failed to reveal the fact of the settlement prior to entering into the lease. In either case, the elements of misstatement are satisfied as the first scenario amounts to an assertion, while the latter amounts to non-disclosure of information which Mr. Potter knew from the negotiations would have corrected the plaintiff's belief as to the purpose and effect of the option clause in the lease.
The evidence also demonstrates that the misrepresentation as to the status of the Gibbs Oil litigation was material. The Cohens testified that, because they believe it is better business practice to own than to rent, they would never have entered into the lease agreement had they known that the litigation had been settled. Rather, they would have attempted to exercise their option. In addition, had they known that the option was no longer valid, they would have sought to purchase another piece of property. It is evident from the factual background of the parties' business relationship with respect to the property that the plaintiffs desired ultimately to purchase the property and that they leased it because they were unable to purchase it outright and because the possibility existed that they would be able to purchase it in the future. Viewed in this context, it is clear that a reasonable person would have considered the status of the litigation and its effect on the validity of the option in entering into the lease agreement.
Moreover, the Court finds that, in the context of their relationship, Mr. Potter knew that his failure to disclose the fact of the settlement would induce the plaintiff to sign the lease. In fact, it is reasonably inferable that he agreed to the carefully worded option clause in the lease in a deliberate effort to induce the plaintiff to sign it.
Defendants' Motion to Amend
Also, it must be noted that the defendants, after trial, brought a motion to amend their answer to include the defense of laches. Rule 8(c) of the Superior Court Rules of Civil Procedure requires that this defense be affirmatively pleaded. This rule protects the complaining party from unfair surprise at trial. The failure to raise an affirmative defense in a timely manner constitutes a waiver of that defense. World-Wide Computer v. A.Kaufman Sales, 615 A.2d 122, 124 (R.I. 1992). Conversely, Rule 15(a) allows a party to "amend his or her pleading . . . by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." In Mikaelian v.Drug Abuse Unit, 501 A.2d 721, 722 (R.I. 1985) the Rhode Island Supreme Court held that amendments to pleadings are to be allowed with great liberality absent a showing of extreme prejudice.
The apparent conflict between these competing doctrines was discussed in World-Wide Computer (supra) where the court held
 [I]n resolving such a conflict, we must necessarily take into account such elements as the extent of prejudice, as well as the question of a defendant's knowledge of the circumstances that should have alerted him or her to the existence of such a defense.
In this case, there are no circumstances that prevented the defendants from knowing of the existence of the defense when the case commenced. To allow the defendants to amend their answer to include the defense of laches, after the trial has already concluded, would greatly prejudice the plaintiff.
The Court would also like to note that had it allowed the defendants to amend their answer to include the defense, it would nevertheless have held in favor of the plaintiff on this issue for the following reasons. It is well known that "he who seeks equity must do equity," Shiller v. Gemma, 106 R.I. 163, 1666,256 A.2d 487, 489 (1969). This Court has already commented regarding Mr. Potter's actions and his veracity. More importantly, a court considering the defense of laches must use a two-part test. First, there must be negligence on the part of the plaintiff that leads to a delay in the prosecution of the case. Second, this delay must prejudice the defendant. O'Reilly v.Town of Glocester, 621 A.2d 697, 702 (R.I. 1993). Were the Court to apply this test to the facts of this case, it would find no prejudice to the defendants. The defendants have benefited from their original misrepresentation. This Court will not allow them to benefit any further.
In light of this Court's findings of fact and a review of the law, this Court finds that Mr. Potter did misrepresent the state of the Gibbs Oil litigation and that plaintiff was thereby induced to enter into the lease by virtue of this misrepresentation. Accordingly, the Court finds for the plaintiff on its misrepresentation claim and declares that the lease agreement is rescinded. The parties have stipulated that the amount of rent charged pursuant to the lease was the fair rental value. Defendant is entitled to retain the rent collected while plaintiff occupied the property. However, plaintiff is entitled to recover any rent paid after it vacated the premises.
Counsel shall submit the appropriate judgment for entry.