PILOT'S POINT MARINA, INC.

v.

CAZZANI POWER BOAT
MANUFACTURING,
INC.

No. 98–214–Appeal.

Supreme Court of Rhode Island.

Feb. 15, 2000.

Geoffrey Alan Regan, for plaintiff.

Timothy J. Dodd, for defendant.

Present WEISBERGER, C.J., and
LEDERBERG, BOURCIER,
FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case arose from a boat manufacturing company's dissatisfaction with custom-made boat molds[1] it ordered from an experienced boat maker. The company, Cazzani Power Boat Manufacturing, Inc., (Cazzani) appealed the entry of a judgment in favor of the mold-maker, Pilot's Point Marina, Inc. (Pilot's Point); Cazzani also challenged the dismissal of its counterclaim. Cazzani alleged three errors, namely, that the trial justice erred (1) by allowing Pilot's Point to amend its response to Cazzani's counterclaim by pleading lack of Cazzani's corporate capacity as a defense, (2) by denying Cazzani's motion for a continuance to enable it to reinstate its corporate charter, and (3) by overlooking and misconstruing material evidence in granting judgment to Pilot's Point. Because the counterclaim was dismissed without prejudice to Cazzani and because we have concluded that the trial justice neither overlooked nor misconstrued material evidence, the appeal is denied.

### Facts and Procedural History

On or about November 22, 1992, Pilot's Point and Cazzani entered into a contract under which Pilot's Point was to manufacture a deck mold and a hull mold using a prototype supplied by Cazzani. Cazzani intended to use the completed molds to manufacture additional boats.

Several months later, Cazzani took delivery of the hull mold after having made partial payment on the contract. Cazzani apparently encountered difficulty in using the hull mold to manufacture additional boats and, after retrieving the prototype, refused to accept delivery of the deck mold or make further payments on the contract. On July 5, 1994, Pilot's Point filed an action for breach of contract against Cazzani. A month later, Cazzani filed a counterclaim, seeking damages for Pilot's Point's alleged breach of express and implied warranties and for its failure to perform the contract in a satisfactory and workmanlike manner.

A non-jury trial was held in February and March 1998, during which both parties presented lay and expert testimony on the quality and suitability of the prototype supplied by Cazzani and the molds produced by Pilot's Point. At some time during the trial, Pilot's Point became aware that Cazzani's certificate of incorporation had been revoked by the Rhode Island Secretary of State on August 11, 1995. The issue was first raised on cross-examination of one of Cazzani's witnesses, and the trial justice took judicial notice of the revocation.

During closing arguments, counsel for Pilot's Point orally moved to amend its response to Cazzani's counterclaim, seeking permission to add the affirmative defense of lack of corporate capacity. Over Cazzani's objection, the trial justice granted the motion. Counsel for Cazzani immediately moved for a continuance to allow Cazzani to take the steps necessary to vacate the revocation of the company's certificate of incorporation. After brief argument on the issue, the trial justice denied the continuance. At the close of the trial, the justice reviewed the evidence that had been presented, made findings of fact, dismissed Cazzani's counterclaim after finding that Cazzani lacked capacity to sue, and entered judgment for Pilot's Point on its breach of contract claim.

Additional facts will be discussed as required in the legal analysis of the issues raised.

### Dismissal of Cazzani's Counterclaim

First, Cazzani alleged that the trial justice erred in permitting Pilot's Point to

1. Boat molds are used in the manufacture of fiberglass boats. A full-scale model or an existing boat (the prototype) is used to cast molds of separate parts of a boat—here, a hull and a deck. These molds are then used to create fiberglass replicas of the boat parts that are joined together to manufacture boats identical to the prototype.

amend its response to the counterclaim to plead as an affirmative defense Cazzani's lack of corporate capacity to bring suit. Cazzani argued that such a ruling was contrary to our holding in *World–Wide Computer Resources, Inc. v. Arthur Kaufman Sales Co.,* 615 A.2d 122 (R.I.1992) (World–Wide Computer). In that case, we held that the trial justice erred in permitting—four years after commencement of the action—a defendant to amend an answer in order to plead the plaintiff's lack of corporate capacity as a defense. *Id.* at 124–25. We explained that the defendant could have discovered the plaintiff's lack of capacity at the time the suit was filed. *Id.* at 125. Cazzani made this argument to the trial justice, who determined that the holding in *World–Wide Computer* was inapplicable to this case. Specifically, the trial justice found that Pilot's Point could not have raised Cazzani's lack of corporate status at the inception of the action because at that time Cazzani was a valid corporation, whereas the defendant in *World–Wide Computer* could easily have discovered the plaintiff corporation's lack of capacity to maintain suit in Rhode Island courts. *Id.* at 125. Further, the trial justice determined that there was no inequity in permitting the issue to be raised during the trial because Cazzani's trial counsel was also counsel for service of process, had received notice of the revocation, and had taken no steps to have the corporate charter reinstated during the preceding two years.

Second, Cazzani asserted that the trial justice committed further error by denying Cazzani's motion for a continuance during which it could reinstate its corporate charter. Cazzani's certificate of incorporation was administratively revoked by the Secretary of State pursuant to G.L.1956 § 7–1.1–87. Under § 7–1.1–88.1, a revoked certificate of incorporation may be reinstated retroactively under certain conditions. Cazzani argued before the trial justice that a one-month continuance would suffice to reinstate its certificate of incorporation, and it asserted to this Court that

had the continuance been granted, its counterclaim would not have been dismissed. Thus, Cazzani claimed, the trial justice erred by not granting the continuance.

■ Cazzani, however, "has failed to point out how its rights were in any way prejudiced" by the trial justice's grant of Pilot's Point's motion to amend the response and his denial of Cazzani's motion for a continuance. *Walmac Co. v. Zurich Insurance Co.,* 114 R.I. 410, 415, 333 A.2d 686, 689 (1975). The trial justice here dismissed Cazzani's counterclaim because Cazzani lacked the capacity to sue. This dismissal did not constitute a final judgment on the merits, however, and does not preclude Cazzani from proceeding on its claim in a separate action after taking the necessary steps to regain its corporate capacity. *Lombardi v. Sciacca,* 707 A.2d 698, 700 n. 1 (R.I.1998). Under the provisions of G.L.1956 § 9–1–22, when an action is terminated without prejudice, as it was in this case, a party may commence a new action within one year of the termination. We have previously held that a dismissal without prejudice is a final judgment that may be appealed to this Court, *Jackson v. Medical Coaches,* 734 A.2d 502, 504 (R.I. 1999), and when such an appeal is taken, the action is not finally terminated until this Court renders a decision on the appeal. Thus, there remains one year from the date of this opinion during which Cazzani may initiate an action against Pilot's Point. Cazzani alleged at trial that it would be able to have its revocation withdrawn in one month. Therefore it has suffered no harm from the dismissal given its estimate of the time it would need to activate the corporation.

The lack of prejudice to Cazzani in the instant case may be contrasted with the result of the trial justice's decision to permit amendment of the response in *World–Wide Computer.* In that case, we noted that had lack of corporate capacity been raised at the commencement of the action,

the plaintiff corporation could have obtained a certificate of authority to operate in Rhode Island well before trial. *World–Wide Computer*, 615 A.2d at 125. By the time the issue was actually raised, however, the corporation "was no longer a validly existing corporation in Massachusetts and therefore could not readily obtain a certificate of authority in Rhode Island, without reestablishing its existence in Massachusetts." *Id.* Although the Court in *World–Wide Computer* did not explore the specific procedure the corporation would need to undertake to reestablish its existence in Massachusetts, it assumed that "[t]he efforts to revitalize the corporation and obtain a certificate of authority could not reasonably be accomplished within the time remaining for the trial of the case." *Id.* Thus, even though the dismissal of the complaint in *World–Wide Computer* was also not a decision on the merits, the party whose claim was dismissed was still prejudiced by the dismissal. As we have discussed, Cazzani's interests were not harmed in the same way by the trial justice's dismissal of its counterclaim in the case at bar.

■ It is true, however, that if Cazzani chooses to pursue its claim in a separate action, the doctrine of collateral estoppel may preclude its challenge to certain facts. This doctrine "directs that an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties * * *." *Commercial Union Insurance Co. v. Pelchat*, 727 A.2d 676, 680 (R.I.1999). Thus, if the same issues recur in a later action against Pilot's Point, Cazzani will be bound by the findings of fact made by the trial justice in his decision on the claims of Pilot's Point. Depending on the exact nature of Cazzani's later claim, these findings of fact may be dispositive of any later action it may bring. Even so, Cazzani has not been prejudiced. In the case at bar, the dismissal of Cazzani's counterclaim came after it had rested its case. Cazzani was neither prevented nor discouraged from presenting all evidence necessary to prove its counterclaim or to defeat the claims of Pilot's Point. Cazzani was afforded a full and fair opportunity to litigate every fact ultimately decided by the trial justice on the claims of Pilot's Point, and it is not prejudicial if those findings of fact prove detrimental to a separate action on Cazzani's claim against Pilot's Point.

### Evidence Concerning the Deck Mold

Third, Cazzani argued that the trial justice, in rendering his decision, overlooked and misconstrued material evidence concerning the deck mold produced by Pilot's Point. Specifically, Cazzani asserted that the trial justice erred in finding that the deck mold was made in a workmanlike manner and additionally erred by including the cost of storing the deck mold in the damage award.

■ This Court has consistently held that the factual findings of a trial justice sitting without a jury are entitled to great weight, *Hawkins v. Town of Foster*, 708 A.2d 178, 182 (R.I.1998), and we shall not disturb those findings "unless the justice has overlooked or misconceived material evidence or was otherwise clearly wrong." *State v. Collins*, 679 A.2d 862, 865 (R.I. 1996). Such error did not occur here, in our opinion.

■ In rendering his decision, the trial justice thoroughly summarized the evidence that had been presented. In particular he reviewed the expert testimony concerning the construction and quality of the boat molds and found that the expert testifying on behalf of Pilot's Point was the more credible one. Moreover, the opinion of Pilot's Point's expert witness was given greater weight because he had participated in the construction of the molds and had observed them at the time the dispute arose over their quality. The trial justice was less impressed with the testimony of Cazzani's expert because the witness had no firsthand knowledge of the construction of the molds and only observed the molds

five years after they were constructed, at which time they had been physically altered and had been exposed to the elements. Although the trial justice primarily discussed the hull mold, his findings of fact on the credibility and reliability of the expert witnesses were equally applicable to the quality of the deck mold. Therefore, it is our opinion that the justice did not err in finding that the deck mold was produced in a workmanlike manner.

The trial justice further stated that Pilot's Point had proven its right to collect for storage charges through the credible testimony of Pilot's Point's general manager, who testified that Cazzani had never informed Pilot's Point that it was formally rejecting the deck mold. The trial justice also found that Pilot's Point notified Cazzani that storage charges would accumulate until the deck mold was removed by Cazzani. Thus, the findings of fact were supported by material evidence sufficient to include storage charges in the award of damages to Pilot's Point.

## Conclusion

In summary, it is our conclusion that Cazzani was not prejudiced by the trial justice's dismissal of its counterclaim and his denial of a continuance, and the trial justice did not err in entering judgment in favor of Pilot's Point. Therefore, Cazzani's appeal is denied and dismissed, and we affirm the judgment of the Superior Court to which the papers of the case may be returned.