**ESTATE OF Carrie Mae TAYLOR, et al., Appellants,**

v.

**Gregg S. LILIENFIELD, et al., Appellees.**

**No. 93–CV–1444.**

District of Columbia Court of Appeals.

Argued May 20, 1997.

Decided Jan. 27, 2000.

Lee H. Karlin, with whom Richard Ira Lebovitz, Washington, DC, was on the brief, for appellants.

Nathan I. Finkelstein, Bethesda, MD, with whom Larry N. Burch, Cheverly, MD, was on the brief, for appellees Gregg Lilienfield and First Government Mortgage and Investors Corporation.

Eric J. Sanne, Chevy Chase, MD, for appellee Capital City Mortgage Corporation.

1. Both Mr. and Mrs. Taylor have died since the suit was filed. This appeal is being carried forward by their respective estates.

2. The evidence at trial dealt in copious detail with the loan transaction that is at the heart of this case. The testimony was wide-ranging

Before WAGNER, Chief Judge, TERRY, Associate Judge, and GALLAGHER, Senior Judge.

TERRY, Associate Judge.

Carrie Mae Taylor and Earl Taylor filed suit in the Superior Court against First Government Mortgage and Investors Corporation ("First Government"), its vice president, Gregg Lilienfield, and Capital City Mortgage Company ("Capital City"). The case concerns certain actions taken by the defendants in connection with the Taylors' application for a home equity loan. From an adverse judgment the Taylors appeal;[1] we affirm.

I

The Taylors brought this suit to set aside a note and deed of trust executed on July 25, 1990. Their complaint alleged that the defendants had committed various violations of the District of Columbia Interest Rate Ceiling Amendment Act, D.C.Code §§ 28–3301 *et seq.* (1996), and the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* (1994). The Taylors also sought damages for these violations and for intentional infliction of emotional distress. They later added a claim alleging fraud by Capital City and First Government. In its answer to the complaint, Capital City included a counterclaim seeking enforcement of the note and deed of trust. The Taylors answered Capital City's counterclaim and asserted as an affirmative defense that there had been no "meeting of the minds" as to the terms of the note and deed of trust.

Following a three-week trial,[2] the jury returned its verdict. Using a special verdict form provided by the court, the jury found that Lilienfield and First Government had advertised or offered services

and, in several respects, closely contested. We need not summarize it here, however, because it is the jury's verdict, not the evidence as such, that determines the outcome of this appeal.

without the intent to provide them as advertised or offered. For that violation the Taylors were awarded $49,247.50, of which $36,000.50 was designated as punitive damages. The jury also found, however, that the Taylors had not proven their claim of fraud against Capital City and First Government. In addition, the jury expressly found, in its answer to question No. 25 on the verdict form, that there had been no "meeting of the minds" between the Taylors and Capital City on the material terms of the note.[3]

Ruling on post-trial motions, the trial court granted judgment notwithstanding the verdict for Lilienfield and First Government. The Taylors maintained that they had established a TILA violation which survived the jury's finding that no contract ever existed between the parties because there had been no meeting of the minds. The court ruled, however, that TILA was inapplicable because the obligation of the consumer on a credit transaction is a prerequisite to activating TILA's disclosure requirements. The court further ruled that even if TILA had been applicable, the Taylors had failed to present evidence to support a finding that the defendants had violated TILA by providing an improper disclosure statement. In an effort to restore the *status quo ante*, the trial court fashioned a new note (see note 13, *infra*), but declined to award any accrued interest or costs since the date on which Capital City advanced the principal amount of the loan to the Taylors.[4]

Although there were many issues litigated at trial, the only assignments of error presented on appeal by the Taylors are those involving the TILA claims and the trial court's entry of judgment n.o.v. for Lilienfield and First Government.[5]

## II

TILA subjects lenders such as Capital City to liability for failing to make material disclosures to borrowers during certain credit transactions.[6] The jury found that two of the fees charged by Mid–Atlantic Title, Inc., and included in the "amount financed" box on the loan documents were not legitimate and reasonable.[7] Read in light of the court's instructions, that finding meant (as the trial court later said in its order) that those fees "should not have been included in the amount financed but instead included in the finance charge on the Federal Truth in Lending Disclosure Statement." Capital City moved for judgment n.o.v. based on these findings, arguing that TILA does not prohibit fees which are not legitimate and reasonable, but inaccurate disclosures of fees which are charged to the borrower. Capital City also maintained that because the jury found there had been no meeting of the minds with respect to the loan, the transaction was not subject to TILA at all. The trial court agreed, and so do we.

██ Liability for failing to make material disclosures under TILA attaches at the moment the transaction between lender and borrower is "consummated." 15

---

**3.** The verdict form contained twenty-seven questions, most of which were to be answered yes or no. The jury made numerous other findings on that form which are not pertinent to this appeal.

**4.** The court did, however, award amounts paid for taxes and water.

**5.** We note in passing that the trial court, at the conclusion of the plaintiffs' case, granted a directed verdict for the defendants on the emotional distress claim. That ruling is not challenged on appeal.

**6.** In a closed-end credit plan such as the one involved in this case, the lender must disclose (1) the amount financed, (2) the finance charge, (3) the annual percentage rate, (4) the sum of the amount financed and the finance charge ("total of payments"), (5) the number, amount, and due dates or periods of payments scheduled to repay the total of payments, and (6) where the loan is secured by property, a statement regarding that property. 15 U.S.C. §§ 1638(a), 1640(a).

**7.** *See* 12 C.F.R. § 226.4(c)(7) (1991).

U.S.C. § 1631;[8] 12 C.F.R. § 226.17(b) (1991). "Consummation" is defined for TILA purposes as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13) (1991). Because the existence and timing of a contractual obligation is determined by state law, consummation under TILA is a state law question. 12 C.F.R. § 226, Supp. I, ¶ 2(a)(13) (1991); *see generally Murphy v. Empire of America, FSA*, 746 F.2d 931, 934 (2d Cir.1984); *Bourgeois v. Haynes Construction Co.*, 728 F.2d 719, 720 (5th Cir.1984).

 In the District of Columbia, no contract arises (and any apparent contract is void) if the minds of the parties do not meet honestly and fairly without mistake or mutual misunderstanding upon all issues involved. *E.g., Hollywood Credit Clothing Co. v. Gibson*, 188 A.2d 348, 349 (D.C.1963). In the instant case, the jury found that there had been no such meeting of the minds. From that finding it necessarily follows, as the trial court recognized, that neither the Taylors nor Capital City became obligated under the putative agreement. Consequently, for purposes of TILA, they did not reach a point of "consummation," and the liability imposed on lenders by TILA was never triggered.

 Liability under TILA cannot attach with respect to a transaction that was never "consummated." *See, e.g., Jensen v. Ray Kim Ford, Inc.*, 920 F.2d 3, 4 (7th Cir.1990) (TILA is enforceable only as to contracts on which the borrowers are obligated); *Clark v. Troy & Nichols, Inc.*, 864 F.2d 1261, 1263–1264 (5th Cir.1989) (TILA's requirements do not apply to a loan agreement unless and until the underlying transaction is consummated); *Harman v. New Hampshire Savings Bank*, 638 F.2d 280, 282 (1st Cir.1981) (no liability under TILA because the underlying transaction was never consummated).[9] The Taylors themselves raised the affirmative defense that they were not obligated on the Capital City loan because there had been no meeting of the minds. Because the jury specifically found in their favor on this point, they cannot now seek to enforce TILA's disclosure requirements. "Parties may not assert one theory at trial and another theory on appeal." *Hackes v. Hackes*, 446 A.2d 396, 398 (D.C.1982) (citation omitted). The trial court therefore properly granted judgment n.o.v. against the Taylors on their TILA claim.[10]

## III

Lilienfield and First Government moved in the trial court for judgment n.o.v., contending that there was no basis for the damage award against them in light of the jury's finding that the underlying agreement never came into being. They further maintained that even if the Taylors had made out a case for compensatory damages, the evidence was legally insufficient to support an award of punitive damages.

---

8. TILA provides in pertinent part:

 Subject to subsection (b) of this section, a creditor or lessor shall disclose to the person who is obligated on a consumer lease or a consumer credit transaction the information required under this subchapter.
 15 U.S.C. § 1631(a).

9. The trial court was careful to note that this was not a case in which an otherwise binding contract was either rendered void by state law or subsequently rescinded. Neither of those situations arose in the case at bar; rather, the contractual obligation that is a prerequisite to TILA liability never existed in the first place.

10. We decline to follow two cases cited by the Taylors, *Dryden v. Lou Budke's Arrow Finance Co.*, 630 F.2d 641 (8th Cir.1980), and *Williams v. Public Finance Corp.*, 598 F.2d 349 (5th Cir.1979). We agree with the trial court "that those decisions ... which extend liability for contracts which were never consummated are distinguishable as both contrary to the weight of later authority, and rendered under an earlier definition of 'consummation' which has since been rejected by Congress." *See also* 1 JOHN R. FONSECA, HANDLING CONSUMER CREDIT CASES § 8:5, at 310 (3d ed.1986) (describing difference between former definition and current definition of "consummation").

They make essentially the same two arguments on appeal.

In deciding to grant judgment n.o.v. for Lilienfield and First Government, the trial court deemed it "crucial" that the Taylors' claim for damages against those two defendants "was premised on the existence of a binding contract between [the Taylors] and Capital City." The compensatory damages alleged by the Taylors "flowed from their inability to meet the obligations imposed upon them by an allegedly fraudulently induced agreement." However, since the jury found that no contract existed between the parties, the Taylors were not subject to any obligations based on the purported loan agreement. Thus the court granted the motion for judgment n.o.v. "[b]ased on lack of evidence in the record of damages caused by the false advertising ...." We affirm that ruling.

■ At trial, the only claim for compensatory damages was that the Taylors had suffered damages equal to the difference between what they believed were the terms of the loan (8 percent interest) and what the terms of the loan actually were (24 percent interest).[11] However, the jury specifically found that there had been no meeting of the minds between the Taylors and Capital City concerning the loan and that, as a result, there was no enforceable contract between them. It necessarily follows, as the trial court ruled, that because there was no contract under which the Taylors could have been obligated, they could not recover any damages based on that supposed contract. In the trial court's words, "[t]he jury was not presented with potential damages consistent with a finding that the note is void."

■ It is now established in the District of Columbia that when there is no basis for compensatory or "actual" damages, there can be no consideration of punitive damages. See *Maxwell v. Gallagher*, 709 A.2d 100, 104 (D.C.1998) (collecting cases). Furthermore, although an award of nominal actual damages may support an award of punitive damages, *Robinson v. Sarisky*, 535 A.2d 901, 907 (D.C.1988), the jury in this case did not award even nominal damages to the Taylors.[12] Consequently, the trial court acted properly when it granted judgment n.o.v. to Lilienfield and First Government on the Taylors' claim for punitive damages.[13]

## IV

The outcome of this appeal turns on a factual finding by the jury that no contract

---

11. The trial court in its order summarized the Taylors' claim for damages as follows:

Plaintiffs assert that they were damaged by the fraudulent advertising through the refinancing of the HUD mortgage at a 24% interest rate which was argued at trial, and through the lost equity in their home proposed for the first time during the discussion of the jury instructions, both "as a result of the loan transaction." Both of these bases for damages flowing from the advertising presume that the Capital City loan agreement remains in effect, and that the Taylors have to pay back Capital City's loan according to the terms of the agreement. The figure of $13,247.00 proposed to the jury was based on this approach, as was the proposal of $40,000 in lost equity, which was never presented to the jury.

12. Because the jury found, in response to question No. 11 on the verdict form, "that the Taylors were furnished with a written statement which clearly and conspicuously set out their right to pay their real estate taxes directly and not to an escrow account," it did not need to answer question No. 12, which asked about nominal damages. As the trial court said in a footnote in its first post-trial order, "The possibility of nominal damages was raised at trial and presented to the jury, but they were not awarded by the jury."

13. The Taylors rely on *Beckman v. Farmer*, 579 A.2d 618 (D.C.1990), for the proposition that an equitable restructuring of the loan agreement may be the basis for punitive damages. This argument is unpersuasive, however, because it ignores the fact that the Taylors failed to claim compensatory damages based on anything other than the existence of a binding contract. Indeed, the note, as restructured by the court, deliberately put the Taylors in a position in which they would not suffer any pecuniary loss.

existed between the Taylors and Capital City. The legal consequences of that finding have been outlined in parts II and III of this opinion. For the reasons there stated, the judgment of the trial court is in all respects

*Affirmed.*