DECISION
Before the Court are various post-trial motions submitted by Plaintiff Wayne Cady, and Defendants, IMC Mortgage Co., RMC Holdings Inc., RMC L Inc., and Harry C. Struck, after jury verdicts for Plaintiff. The motions and arguments will be discussed individually.
 Facts/Travel
On or about November 3, 1997, Wayne Cady ("Plaintiff") entered into an employment agreement with RMC Holdings, Inc. and/or IMC Mortgage Co. for a fixed period of five (5) years. The Plaintiff was paid in accordance with the terms of the agreement by IMC Mortgage Co., RMC Holdings Inc., and/or RMC L Inc. (hereinafter "Corporate Defendants"). According to the Amended Complaint, the Plaintiff was terminated by one or more of the Defendants on or about October 13, 1998. Shortly thereafter, the Plaintiff filed the present suit. The Amended Complaint contains ten Counts. Count I is against IMC Mortgage Co., RMC Holdings Inc., and/or RMC L Inc. and Counts II through X are against IMC Mortgage Co., RMC Holdings Inc., RMC L Inc. and Harry Struck ("Defendants"). The Counts include: I — Breach of Contract, II — Interference with Contractual Relations, III — Interference with Business Relations, IV — violation of the Federal Wiretapping Statute18 U.S.C. § 2510, et. seq., V — violation of the State Wiretapping Statute R.I.G.L. § 12-5.1-13, VI Invasion of Privacy, in violation of R.I.G.L. § 9-1-28.1, VII — civil liability for crimes and offenses in violation of R.I.G.L. § 9-1-2, Violation of Statute, VIII — Defamation, IX — Intentional Infliction of Emotional Distress, X — Negligent Infliction of Emotional Distress.[1]
 Defendants' Rule 50(b) Motion — Judgment as a Matter of Law
At the close of the Plaintiff's case-in-chief and again after the Defendants rested their own case-in-chief, the Defendants moved, pursuant to Rule 15(a) and (b), to amend their answer to raise the defense that, based upon the exclusivity of the Workers' Compensation Court, this Court lacked subject matter jurisdiction over the Plaintiff's tort claims. This Court reserved judgment. The jury then returned a verdict against the IMC/RMC Defendants regarding Count V (Federal Wiretapping) and Count VII (R.I.G.L. § 9-1-2). The Defendants now renew their Rule 50(b) motion and seek judgment as a matter of law in their favor. The Defendants argue that the Workers' Compensation Court has exclusive jurisdiction over an injury caused by a fellow employee or employer.
The Defendants argue that they should be allowed to conform their pleadings to the proof under Rule 15(b) based upon the fact that new evidence was adduced at trial. The Defendants, relying on Murray v. City of New York, 43 N.Y.2d 400, 372 N.E.2d 560 (1977), also argue it was the Plaintiff's duty to plead and prove freedom from the exclusivity provisions of the Workers' Compensation Act, rather than the Defendants' duty to prove exclusivity. The Plaintiff argues that the Workers' Compensation Act's exclusivity provision must be raised as an affirmative defense and there is no justification for allowing it to be raised for the first time at trial. The Plaintiff counters that he would be substantially prejudiced if the Court granted Defendants' motion to amend and the tort claims were barred.
Rule 15(a) of the Superior Court Rules of Civil Procedure specifically states that leave to amend a pleading " . . . shall be freely given when justice so requires." The Rhode Island Supreme Court has noted that granting or denying a "leave to amend a pleading lies within the sound discretion of the trial justice." It also points out, however, that Rule 15(a) "liberally permits amendment absent a showing of extreme prejudice." Wachsberger v. Pepper, 583 A.2d 77, 78 (R.I. 1990) (quoting Babbs v. John Hancock Mutual Life Ins. Co., 507 A.2d 1347, 1349 (R.I. 1986)); Inleasing Corp. v. Jessup, 475 A.2d 989, 993 (R.I. 1984). "The burden rests on the party opposing the motion to show it would incur substantial prejudice if the motion to amend were granted." Wachsberger, 583 A.2d at 78-79.
Plaintiff, in arguing he would be prejudiced if the motion were granted, argues that a significant amount of time, money and effort went into the preparation of trial prior to the Defendants' motion to add the defense of exclusivity. While that fact cannot be disputed, the Rhode Island Supreme Court has repeatedly stated that "mere delay is an insufficient reason to deny an amendment." Wachsberger, 583 A.2d at 79 (quoting Inleasing Corp. v. Jessup, 475 A.2d 989, 992 (1984)). Amendments have been allowed "after a trial justice granted a motion to dismiss, Local 850, International Assoc. of Firefighters v. Pakey, 107 R.I. 124,265 A.2d 730 (1970), one day prior to the date upon which a case had been noticed or scheduled for trial, Mikaelian v. Drug Abuse Unit, 501 A.2d 721
(R.I. 1985), and even at the completion of trial, Wilkinson v. Vesey,110 R.I. 606, 295 A.2d 676 (1972)." Wachsberger, 583 A.2d at 79. Therefore, although the Plaintiff points out that countless hours have been logged in preparation for the trial, that in itself does not constitute substantial prejudice and is not enough to deny a motion to amend pleadings. The analysis does not end there however.
While analyzing cases regarding Rule 15, the Rhode Island Supreme Court has pointed out Rule 15's apparent conflict with Rule 8 and Rule 12 of the Rhode Island Civil Procedure. The court has stated that failure to raise an affirmative defense in a timely manner constitutes a waiver of that defense in order to protect the complaining party from unfair surprise at trial. See World-Wide Computer Resources v. Arthur Kaufman Sales Co., 615 A.2d 122, 124 (R.I. 1992). However, as previously ruled by another justice of the Superior Court, "[w]hile the general rule requires that affirmative defenses are waived when not plead in a party's answer, failure to raise a defense does not forever preclude a party from raising it;" and, "[t]he proper remedy for a party who fails to raise an affirmative defense is a motion for leave to amend under Rule 15." Osborn v. State, 1992 WL 813634, at 1 (R.I. Super 1992) (quoting 5 Wright, Federal Practice and Procedure 1278 (1982)). Therefore, in order to resolve the conflict between the rules, courts must "take into account such elements as the extent of prejudice, as well as the question of a defendant's knowledge of circumstances that should have alerted him or her to the existence of such a defense." World-Wide Computer Resources, Inc., 615 A.2d at 124.
In the present case, the Defendants first raised the issue of amending their answer to include the defense of the exclusivity provision of the Workers' Compensation Act at the end of the Plaintiff's case in chief. Before reaching the issues the Defendants raised, it should be noted that it is well recognized that the Superior Court of Rhode Island is a court of general jurisdiction. Rhode Island General Law § 8-2-14 states that:
 "The superior court shall have original jurisdiction of all actions at law where title to real estate or some right or interest therein is in issue, except actions for possession of tenements let or held at will or by sufferance; and shall have exclusive original jurisdiction of all other actions at law in which the amount in controversy shall exceed the sum of ten thousand dollars ($10,000). . . ."
Therefore, this Court clearly has subject-matter jurisdiction to hear Plaintiff's claims such as interference with contractual relations, invasion of privacy, defamation, and negligent and intentional infliction of emotional distress. Our Supreme Court has said that "[j]urisdiction over the subject-matter is invested by law in the judge, or in the court which he [or she] holds, [however], the manner and extent in which the jurisdiction shall be exercised are . . . questions for his [or her] determination . . . although upon correctness of his [or her] determination in these particulars the validity of his [or her] judgment may depend." Rock Ridge Ltd. v. Assessor of Taxes, 667 A.2d 778, 780 (R.I. 1995) (quoting Hartt v. Hartt, 397 A.2d 518, 522 (1979)). Furthermore, the court in Murray, while noting that although the defense of workers' compensation as an exclusive remedy may be waived, stated that the issue "is not the kind of subject-matter jurisdiction deficiency which ousts a court of competence to decide the case." Murray v. City of New York, 43 N.Y.2d 400, 407 (1977). The determining question is whether the Plaintiff will be substantially prejudiced if the Defendants' motion to amend their answer is granted.
As previously noted, the Defendants rely upon Murray v. City of New York, 43 N.Y.2d 400, 407 (1977) in support of their argument. In Murray, the defendants filed a motion after trial had started to conform the pleadings to the proof and dismiss the case based on workers' compensation as a total bar to suit against the city. The trial court justice decided to dismiss as to the city; however, both parties decided to take the case to fulfillment in the trial court. After the verdict against the city, the motion was granted and the case was dismissed as to the city. The court of appeals upheld the trial justice's decision to grant the motion to conform the pleadings to the proof since under the specific circumstances of the case, the "plaintiff was not permitted to claim surprise or prejudice." Murray, 43 N.Y.2d at 406. In doing so, the court also stated that the matter of workmen's compensation came as no surprise to plaintiff since her complaint stated the decedent was employed by the city. Id. Furthermore, the court stated that "the plaintiff's counsel [did not] indicate that a claim had not been timely filed for workmen's compensation benefits" and was "hardly a full and complete statement showing prejudice." Id.
In the present case, both the complaint and the amended complaint indicate the presence of employment between the Plaintiff and the Defendants. The Plaintiff, therefore, cannot claim that he was surprised by the raising of the defense. At the same time, however, when discussing the issue of notice, it can also be stated that the Defendants should have been alerted of the employment relationship when the complaint was filed. See World-Wide Computer Resources, Inc., 615 A.2d at 124-25. Nonetheless, Murray is distinguishable not so much on the issue of notice, but on the issue of prejudice. In Murray, the plaintiff had apparently reserved her right to bring a claim to the compensation board. In the present case, no such right appears to exist. The Plaintiff has neither sought or received workers' compensation, and the time to file his claim in the Workers' Compensation Court has since passed. Presumably, the injury for which the Plaintiff brings suit occurred the date he was terminated from employment. According to Rhode Island General Laws § 28-35-57, the Plaintiff had two (2) years to receive payment of weekly compensation or file a petition. The date he was terminated was October 13, 1998. Therefore, the filing deadline in Workers' Compensation Court was October 13, 2000. Although the original complaint was filed on October 29, 1998, the first time the Defendants attempted to dismiss the complaint based upon a workers' compensation exclusivity argument was during trial between March 26, 2001 and April 13, 2001. Therefore, if the amendment was granted and the case dismissed, the Plaintiff will have no remedy as to the remaining counts between Count Two and Count Ten. That indeed is evidence of extreme prejudice, and this Court cannot conceive of prejudice any greater than closing the doors to the tribunal long after the event but before the facts are decided.
This Court is well aware that motions to amend under Rule 15 of the Rhode Island Rules of Civil Procedure are to be liberally granted. See Wachsberger v. Pepper, 583 A.2d 77,78 (R.I. 1990); Inleasing Corp. v. Jessup, 475 A.2d 989, 993 (R.I. 1984). It is also cognizant that mere delay is an insufficient reason to deny an amendment. Id. Nonetheless, the specific facts and circumstances of the present case show that the Plaintiff will suffer extreme prejudice if the amendment is allowed. Although the Plaintiff may have had a remedy in the Workers' Compensation Court from the time the complaint was filed until October 13, 2000, nearly 2 years later, that remedy expired before the Defendants motioned this Court to amend their answer and conform their pleadings to the proof. Therefore, the Defendants' Rule 50(b) motion for judgment as a matter of law and Defendants' Rule 15(b) motion to conform the pleadings to the proof are denied.
 Defendant Struck's Rule 59 Motion to Alter or Amend the Judgment or Alternatively for a New Trial
Defendant Struck ("Struck") seeks relief pursuant to Rule 59 of the Rhode Island Superior Court Rules of Civil Procedure on the grounds that this Court erred as a matter of law on various issues and rulings during trial. As a result of those errors, Struck requests that this Court amend the judgment or grant a new trial. Numerous arguments have been put forth, therefore, this Court will discuss each argument individually.
 I. Jury Instructions/Federal Wiretapping Claim
Struck first argues that this Court erred as a matter of law when it instructed the jury concerning the federal wiretapping claim. As a result, Struck maintains that the improper instructions destroyed
Defendant Struck's defenses regarding the Plaintiff's claims under R.I.G.L. § 9-1-2 and invasion of privacy. Specifically, Struck argues that the Plaintiff and this Court incorrectly defined the term "ordinary course of business" as it is used in the "extension telephone exception" of 18 U.S.C. § 2510(4).[2] Also, Struck states that the Plaintiff's reliance on United States v. Harpel, 493 F.2d 346 (10th Cir. 1974) was misplaced.
The Plaintiff argues that the jury instruction regarding the wiretapping claim was correct and notes that incorrect jury instructions cannot, as a matter of law, support a new trial. He further argues that the case cited by Struck, Briggs v. American Air Filter Co., Inc.,630 F.2d 414 (5th Cir. 1980), is distinguishable and set strict limits to the "extension telephone exception" found in 18 U.S.C. § 2510(5). The Plaintiff further points out that Harpel sets forth a clear straightforward explanation of how "ordinary course of business" is defined under the "extension telephone exception."
In a recent decision, the Rhode Island Supreme Court agreed with those courts that construe federal and state wiretapping statutes to include a tape recorder or other recording device as an intercepting device. See State v. Jeffrey O'Brien, 774 A.2d 89 at 9 (R.I. 2001). Along with that finding, the Court also quoted Chief Justice Rehnquist when he stated:
 "In a democratic society privacy of communication is essential if citizens are to think and act creatively and constructively. Fear or suspicion that one's speech is being [secretly] monitored by a stranger [or secretly recorded for an illegal purpose by a malicious `friend'], even without the reality of such activity, can have a serious inhibiting effect upon the willingness to voice critical and constructive ideas." Bartnicki v. Vopper, ___U.S.___, 121 S.Ct. 1753, 1769, 149 L.Ed.2d 787, (2001) (Rehnquist, C.J., dissenting) (quoting President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, 202 (1967)); State v. Jeffrey O'Brien, 774 A.2d at 96.
As our Supreme Court has noted, "Title III's purpose has been described as twofold: (1) to protect the privacy of oral and wire communications, and (2) to provide, on a uniform basis, the circumstances and conditions under which interception of such communications would be allowed." State v. Delaurier, 488 A.2d 688, 692 (R.I. 1985).
In the present case, the parties seemingly agree that one of the critical issues regarding the wiretapping claim is whether the interception in this case falls within the so-called "extension telephone exception." See Plaintiff's Memorandum in Opposition to Harry Struck's Rule 50 Motion, p. 14. In order for the exception to apply, the interception must have been achieved in the ordinary course of business. See 18 U.S.C. § 2510(5). Simply stated, this Court read the statute, reviewed the relevant case law interpreting the statute, and summarized the law, for the most part, in its own words. The Rhode Island Supreme Court has repeatedly approved this method, and this Court finds that no error of law has been committed in doing so. State v. Jeffrey O'Brien, 774 A.2d at 100-01 (citing State v. Durfee, 666 A.2d 407, 409 (R.I. 1995)).
 II. Jury Instructions/Punitive Damages
Struck next argues under his Rule 59 motion that the Court erred in its instructions to the jury concerning punitive damages. He states that the Plaintiff has produced no evidence of conduct on the part of Struck that could be characterized as criminal or support punitive damages. In making this argument, Struck relies on the premise that the Court incorrectly instructed the jury concerning the monitoring of telephone calls. He also maintains that the punitive damages awarded by the jury are excessive even if the Court was correct in its instructions regarding the monitoring of telephone calls.
The Plaintiff argues that the jury, having concluded that Struck wiretapped the Plaintiff, invaded his privacy, and violated § 9-1-2
of the General Laws, properly awarded punitive damages. The Plaintiff further argues that the punitive damages awarded are not excessive in light of the Plaintiff's damages in wrongfully being terminated from his employment. Lastly, the Plaintiff argues that the jury instructions that Struck himself submitted properly set forth the standard for awarding punitive damages.
"The standard in Rhode Island for imposing punitive damages is rigorous and will be satisfied only in instances wherein a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages." Mark v. Congregation Mishkon Tefiloh,745 A.2d 777, 779 (R.I. 2000) (citing Palmisano v. Toth, 624 A.2d 314, 318 (R.I. 1993)). It has also stated that "[a]n award of punitive damages is considered an extraordinary sanction and is disfavored in the law, but it will be permitted if awarded with great caution and within narrow limits." Id. It is for the trial justice, however, "to determine whether the party seeking punitive damages has met this high standard to support such an award, and it is in the discretion of the trier of fact to determine whether and to what extent punitive damages should be awarded." Id. (citing Peckham v. Hirschfeld, 570 A.2d 663, 668 (R.I. 1990)).
In the present case, the jury returned a verdict that included an award of punitive damages. This Court finds that the amount was neither excessive or egregious. It also finds that a trier of fact could have relied on evidence introduced at trial to determine whether punitive damages were appropriate. The award does not indicate that the jury was improperly influenced and it does not "shock the conscience." See Shayer v. Bohan, 708 A.2d 158 (R.I. 1998). Therefore, this Court finds that the jury instructions regarding the punitive damages, and the punitive damages awarded by the jury against Struck, are proper.
 III. Interest/Punitive Damages
Struck's third argument is the same argument set forth by Corporate Defendants, namely, that the court clerk miscalculated the judgment by calculating interest on the punitive damages. The Plaintiff agrees but argues that Struck's motion does not specifically raise that point. Nonetheless, the Rhode Island Supreme Court has clearly stated that "the prejudgment-interest statute, [Rhode Island General Law] § 9-21-10[3], does not apply to punitive damages." DeLeo v. Anthony A. Nunes, Inc.,546 A.2d 1344, 1348 (R.I. 1988). As the court noted, "§ 9-21-10
speaks of an award of interest on pecuniary awards but fails to mention punitive awards," and "punitive damages are awarded to punish the defendant rather than compensate the plaintiff." Id. (citing Greater Providence Deposit Corp. V. Jenison, 485 A.2d 1242, 1244 (R.I. 1984)). Therefore, any interest that was applied to the award of punitive damages against any party was in error and must be removed.
 IV. Damages Under 18 U.S.C. § 2520(c)
Fourth, Struck argues that this Court should limit the damages on Plaintiff's statutory wiretapping claim, and reduce the award to the amount as specifically provided by 18 U.S.C. § 2520(c).[4]
He asserts that there is no evidence concerning actual damages suffered by the Plaintiff, such as medical costs or records, and that the statutory amount of $10,000 should be awarded. He also states that the Plaintiff cannot claim there were actual damages based on the Plaintiff's award under the breach of contract claim against the Corporate Defendants. The Plaintiff argues that the award of $50,000 was justified in light of the fact that the wiretapping led to the "phony termination for cause setup," with its attendant emotional distress and other injuries. The Plaintiff argues that the minimum statutory recovery amount of $10,000 can be exceeded by actual damages.
It is clear under 18 U.S.C. § 2520(c)(2) that a plaintiff may recover the greater of either his or her actual damages as provided in subsection A or his or her statutory damages as provided in subsection B. Although Struck argues that the Plaintiff cannot claim any actual damages based on the Plaintiff's award under the breach of contract claim, the jury found damages as a result of Struck's wiretapping actions. A reasonable jury could have concluded that the Plaintiff sustained damages as a result of Struck's actions. Therefore, the damage amount awarded by the jury shall not be disturbed by this Court and is proper under 18 U.S.C. § 2520(c).
 V. Multiple Damages
Finally, Struck argues that the verdict should be amended to exclude multiple damages for the same events. He states that all the claims are based on the same conduct, and asserts that the jury should not have awarded the Plaintiff multiple damages for wiretapping ($50,000), invasion of privacy ($25,000), and violation of Rhode Island General Law § 9-1-2 ($10,000). Although the Plaintiff agrees with Struck that a plaintiff cannot receive multiple recoveries for the same injuries, he argues that the jury in the present case was instructed to award the Plaintiff his damages to fully compensate him. The Plaintiff also states that it is clear from the verdict sheets that the jury allocated 100% of the Plaintiff's damages between various counts. Finally, the Plaintiff concludes that there is no reason to presume that the jury awarded duplicative damages.
The Rhode Island Supreme Court has stated that a "plaintiff's recovery against a defendant under one tort theory precludes any duplicative recovery for the same damages under some other tort theory." Graff v. Motta, 695 A.2d 486, 492 (R.I. 1997) (citing Borden v. Paul Revere Life Insurance Co., 935 F.2d 370, 383 (1st Cir. 1991)); see also DeCosta v. Viacom International, Inc., 758 F. Supp. 807, 812 (D.R.I. 1991) ("a plaintiff may not get additional bites of the apple by demanding multiple forms of relief for the same injury or by cloaking a single claim in a variety of legal theories"). In the present case, there was no set damage amount, and the jury could have awarded any amount of damages as it thought the facts of the case warranted. Furthermore, it is clear from the verdict form that the jury chose to apportion damages between different counts. Although those counts may arise out of the same set of facts, there is simply no evidence that the amount of damages awarded to the Plaintiff were duplicative. For instance, the jury did not find that the amount of total damages to be a certain figure, and then award that same figure for every count they found liability. Instead, it allocated the damages among the different counts individually. This Court, in the absence of evidence of improper influence or prejudice, will not disturb the findings of a jury and its award of damages, and finds that the damages awarded by the jury in the present case are not duplicative. See Shayer v. Bohan, 708 A.2d 158 (R.I. 1998).
 Defendant Struck's Motion for Rule 11 Sanctions
Struck has moved for sanctions against the Plaintiff and the Plaintiff's counsel pursuant to Rule 11 of the Superior Court Rules of Civil Procedure on the grounds that the Plaintiff's counsel knowingly misrepresented the law to the Court. As Struck points out, Rule 11 provides that "[e]very pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address and telephone number shall be stated." The Rule further states that "[t]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Finally, Rule 11 declares that "[i]f a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, any appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."
Struck argues that the Plaintiff's counsel misrepresented the law by misstating the holding of United States v. Harpel, 493 F.2d 346 (10th Cir. 1974). That misstatement, Struck argues, ultimately led to improper jury instructions that caused prejudice to Struck. Struck asserts that the appropriate sanction is to dismiss all the claims against him.
The Rhode Island Supreme Court has stated that "Rule 11 mandates the good-faith requirement of pleadings." Forte Bros., Inc. v. Ronald M. Ash Associates, Inc., 612 A.2d 717 (R.I. 1992). The 1995 Committee Note following the rule also points out that it "continues to require good faith in pleading, adding that the knowledge, information, and belief in the ground for the pleading or motion be `formed after reasonable inquiry' as to both fact and law." Furthermore, as long as a claim, argument or motion "has some legal and factual basis when considered in light of the reasonable belief of the individual making the claim[,]" that claim, argument or motion is not made in bad faith. Forte Bros., Inc., 612 A.2d at 724. "[T]he subjective standard remains applicable in determining whether the pleadings are in fact violative of the pleading process." Id.
In the present case, there does not appear to be any display of bad faith on the part of the Plaintiff or the Plaintiff's attorney. When submitting his jury instructions to the Court, the Plaintiff's attorney was merely relying on the language of a case he reasonably believed best represented the law and framed the issue. Any difference between the language he used in his proposed jury instructions and the language found in the case was inconsequential. The essence of the law remained the same. Therefore, Struck's motion for Rule 11 sanctions is denied.
 Defendants IMC/RMC's Rule 59(a) Motions to Amend Judgment or Alternatively Make New Findings of Fact Regarding the Judgment Award
The Corporate Defendants have made two motions to amend judgment or alternatively make new findings of fact regarding the judgment award. First, they argue that it appears that the jury awarded the Plaintiff his contract damages for six months past the closing of the RMC business. They also state, as they do in their other motions, that it appears that Dr. Feldman's report added pre-judgment interest into his calculations which is contained in the jury verdict in violation of Rhode Island General Law § 9-21-10. As a result, the Corporate Defendants submit that the only way to correct the problem is to direct the clerk of the court to not add interest and permit the judgment to stand as already having prejudgment interest computed. Furthermore, the Corporate Defendants assert that it appears that the clerk awarded pre-judgment interest upon the jury's award of punitive damages in violation of Rhode Island General Law § 9-21-10. In their second motion, the Corporate Defendants argue that, under Florida law, an employee seeking to collect damages for the alleged breach of an employment contract is required to mitigate his damages. As a result, they state that the jury should have considered both Plaintiff's actual salary he received since his termination, and whether he had truly attempted to mitigate and obtain other employment.
The Plaintiff objects to the Corporate Defendants' motions and states that "RMC/IMC cannot point to any particular feature of [Dr. Feldman's] report which proves exactly how the jury came up with its award." The Plaintiff does agree, however, that Dr. Feldman's report does include prejudgment interest in its calculations, and that the "sole consequence" of the calculations is that "prejudgment interest should not be added to the contract damages." Moreover, the Plaintiff also agrees with the Corporate Defendants that prejudgment interest should not have been added to the punitive damages award. Finally, the Plaintiff also argues that under the facts of this case, and under the terms of the agreement, he did not have to mitigate his damages. According to the Plaintiff, he was entitled to both collect his pay under the contract if he were terminated without cause and work elsewhere without diminution of RMC/IMC's financial obligations to him. Therefore, he states, mitigation was not an issue in this case.
 I. Breach of Contract Damages
Although the Corporate Defendants argue that it appears the jury awarded the Plaintiff his contract damages for six months past the closing of the RMC business, there simply is no solid evidence to that affect. The award does not reflect automatically that the jury computed its damages in any particular manner. Whatever speculation can be made from the verdict does not warrant reversal or amendment of the judgment for those reasons. The Rhode Island Supreme Court has noted that "the trial justice may not disturb the verdict returned by the jury when in his [or her] sound judgment the evidence is such that different minds would naturally and fairly come to different conclusions thereon." Mazzaro v. Narragansett Imp. Co., 283 A.2d 887, 890 (R.I. 1971) (citing Waltz v. Aycrigg, 235 A.2d 338, 341 (R.I. 1967)). "Under that rule the trial justice is required to recognize that the jury has the prior right to exercise the fact-finding power." Id. The jury in this case heard the evidence, and awarded damages accordingly as it saw fit. Therefore, this Court will not disturb the jury's breach of contract award on these grounds.
 II. Pre-Judgment Interest/Breach of Contract
Rhode Island General Law § 9-21-10 states in relevant part:
 "(a) In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein. Post-judgment interest shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein. This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided."
Our Supreme Court has stated that the addition of prejudgment interest is "a purely ministerial act [and] contemplates no judicial intervention." Dimeo v. Philbin, 502 A.2d 825, 826 (R.I. 1986). The Court also stated that "prejudgment interest is not an element of damages, [and] it is purely statutory and is peremptorily added to the jury verdict by the clerk of the court." Id. If in fact a jury does include or contemplate prejudgment interest when determining damages as a result of an erroneous charge or calculations, "reversible error should turn on whether it can be shown that the jury `could have been misled' to the resultant prejudice of the complaining party." Id. Both the Plaintiff and the Corporate Defendants seemingly agree that the consequence of Mr. Feldman's report and calculations where he added interest should be to not add prejudgment interest to the award set by the jury. Therefore, this Court, having been presented with no evidence of prejudice by either party, finds that the miscalculations found in Mr. Feldman's report does not result in reversible error, and instructs that no prejudgment interest should be added to the breach of contract award by the clerk of the court.
 III. Pre-Judgment Interest/Punitive Damages
The Plaintiff and the Corporate Defendants agree that pre-judgment interest should not have been awarded to the award of punitive damages. As stated earlier in this decision, Rhode Island case law is clear regarding pre-judgment interest and punitive damages. The Supreme Court has ruled that the "prejudgment-interest statute, G.L. 1956 (1985 Reenactment) § 9-21-10, does not apply to punitive damages." DeLeo v. Anthony A. Nunes, Inc., 546 A.2d 1344, 1348 (R.I. 1988) (citing Murphy v. United Steelworkers of America, 507 A.2d 1342 (R.I. 1986)). Therefore, this Court finds that any prejudgment interest that was added to any punitive damage award must be removed from the judgment.
 IV. Mitigation of Damages
At trial, this Court did not charge the jury as to whether the Plaintiff properly mitigated his damages after he was terminated from employment. Now under their motion to amend the judgment, the Corporate Defendants point to numerous Florida cases that authorize a Court to instruct a jury to take into account a plaintiff's duty to mitigate. This Court, as well as the Plaintiff, does not disagree with the Florida case law regarding mitigation, but the terms of the Agreement must be construed before reaching the issue. Specifically, section 4(h) of the Agreement states:
 "(h) Termination of Certain Non-Competition Restrictions. In the event the Employee's employment hereunder is not continued by the Company after the expiration of the Contract Term or the Employee is terminated without Cause prior to the Final Closing (as defined in the Asset Purchase Agreement), then the Employee will be released from the non-competition restrictions in subsections (a) and (c) of this Section 4, but the obligations stated in subsection (d) shall continue for twelve months following such termination without Cause."
Section 6(a) of the Agreement states:
 "(a) Subject to the provisions of Section 2, this Agreement is for employment at will and either party may terminate the Employee's employment hereunder, with or without Cause, upon thirty days' written notice prior to the expiration of any term hereof. In the event the Employer terminates Employee's employment hereunder without Cause, Employee shall continue to receive the Base Salary as provided in Section 3(a) through the remaining term of the Agreement."
Under both Florida and Rhode Island case law, a court, when interpreting the terms of a contract or agreement, must give terms their plain and ordinary meaning and determine whether the contract or agreement is ambiguous. See Beans v. Chohonis, 740 So.2d 650 (Fla.App. 3 Dist., 1999) (citations omitted); Mullins v. Federal Dairy Co., 568 A.2d 759
(R.I. 1990). Parties to agreements are free to set forth terms that best suit their needs and demands at the time the agreement is entered. This Court finds the Agreement between the Plaintiff and the Corporate Defendants to be clear and unambiguous. The Agreement in the present case clearly states that if the Plaintiff is terminated without cause, then he is released from his non-competition clause and shall continue to receive his base salary. Therefore, this Court finds that the terms of the Agreement between the Plaintiff and the Corporate Defendants prevail and are such that the Plaintiff is, or was, not required to mitigate his damages.
 Defendants IMC/RMC's Rule 59(a) Motion to Amend Judgment Regarding Imposition of Punitive Damages
The Corporate Defendants have moved to amend the judgment regarding the jury's award of $100,000 in punitive damages where no compensatory damages were awarded. First they argue the jury was not allowed to consider punitive damages on the Plaintiff's breach of contract claim. They also point out that the jury found no liability against the Corporate Defendants for the counts of 1) tortuous interference with contractual relations, 2) invasion of privacy, 3) defamation, and 4) intentional infliction of emotional distress; and, although the jury found liability against them under the federal wiretapping statute and Rhode Island General Law § 9-1-2, no compensatory damages were awarded. The Corporate Defendants argue, therefore, that this Court must amend the jury's award of punitive damages against them and strike any such award from the verdict.
The Plaintiff argues that there was in fact an award of compensatory damages against Defendant Struck who is jointly and severally liable with the Corporate Defendants. Hence, the Plaintiff argues, the Court can find at least nominal damages sufficient to support the jury's decision to impose punitive damages against the Corporate Defendants. The Plaintiff also states that it was the Defendants who provided the verdict form, and they cannot now complain punitive damages were not proper because they are not supported on the jury verdict form.
Courts in numerous jurisdictions have held that there must be actual or compensatory damages in order to support an award of punitive damages. See, e.g., Amwest Savings Assoc. v. Statewide Capital, Inc. 144 F.3d 890 (5th Cir. 1998); Morsey v. Chevron, USA, Inc., 94 F.3d 1470 (10th Cir. 1996); Gateway Technologies, Inc. v. MCI Telecommunications Corp.,64 F.3d 993 (5th Cir. 1995); Estate of Taylor v. Lilienfield, 744 A.2d 1032
(D.C. 2000). The Court of Appeals for the First Circuit has also stated that "most punitive damage awards are insupportable if not undergirded by a predicate award of either compensatory or nominal damages." Campos-Orrego v. Rivera, 175 F.3d 89, 97 (1st Cir. 1999) (citing Kerr-Selagas v. American Airlines, Inc., 69 F.3d 1205, 1214 (1st. Cir. 1995)). Courts have also ruled that, as a matter of federal law, "a punitive damage award which responds to a finding of a constitutional breach may endure even though unaccompanied by an award of compensatory damages." Campos-Orrego, 175 F.3d at 97 (citing King v. Macri,993 F.2d 294, 297-98 (2d Cir. 1993)), Erwin v. County of Manitowoc,872 F.2d 1292, 1299 (7th Cir 1989).
In the present case, the award of punitive damages against the Corporate Defendants is unsupported by any compensatory damages and therefore must be removed from the damage award. This Court finds the Plaintiff's arguments regarding joint and several liability of the Defendants to be unavailing. Numerous times during the trial the Defendants were defined as acting within their individual capacities, and the verdict form distinctly separates the Defendants and the various claims. Furthermore, the facts of this case do not involve such a constitutional breach that would alone support a finding of punitive damages without compensatory damages. The jury awarded both compensatory and punitive damages as it deemed appropriate, and this Court will not disturb that finding absent egregious circumstances. See Shayer v. Bohan, 708 A.2d 158 (R.I. 1998); Mazzaro v. Narragansett Imp. Co.,283 A.2d 887 (R.I. 1971).
 Defendants IMC/RMC's Rule 59(a) Motion Regarding Admission of Expert's Report Into Evidence
The Corporate Defendants argue that the Plaintiff's expert incorrectly calculated pre-judgment interest into his calculations that the jury included in their award. That calculation, they claim, resulted in the Plaintiff being awarded double interest in violation of Rhode Island General Law § 9-21-10. Also the Corporate Defendants state that the clerk should not have added interest to the entire award because 1) the expert broke down the Plaintiff's claim on a per month basis, and 2) judgment interest should not be awarded on punitive damages pursuant § 9-21-10. Therefore the Corporate Defendants request that this Court amend the judgment to remove all awards of interest added by the clerk, remove the award of interest on the punitive damages award, or order a new trial on the breach of contract claim.
As stated earlier, both the Plaintiff and the Corporate Defendants agree that certain miscalculations were made concerning Dr. Feldman's report and that interest should not have been awarded on the punitive damages. Therefore, the Corporate Defendants' motion to amend the judgment in regards to the prejudgment interest that was included in the report and the sufficiency of the clerk's addition of interest is granted. The parties, therefore, shall submit a corrected judgment.
 Plaintiff's Motion to Assess Attorney's Fees and Costs
The Plaintiff seeks attorney's fees incurred from his successful prosecution of the breach of contract claim. The Plaintiff states that fees are warranted pursuant to Paragraph 16 of the Employment Agreement. Paragraph 16 of the Agreement states:
 "16. Attorneys' Fees and Costs. In connection with any legal action to enforce the terms of this Agreement, the prevailing party in such action shall be entitled to receive from the other party all costs incurred in connection therewith, including reasonable attorneys' fees, legal assistant, investigator and other paralegal and clerical fees and costs, including such costs and fees on appeal, if any."
The Plaintiff also asserts that he is entitled to fees under the federal wiretapping claim pursuant to 18 U.S.C. § 2520(b)(3), and entitled to fees pursuant to Rhode Island General Law § 9-1-28.1. The Corporate Defendants argue, among other reasons, that the Plaintiff is not entitled to attorney's fees on claims unrelated to the enforcement of the terms of the Agreement, and states that the Corporate Defendants have a right to inquire about the amount of attorney fees requested by the Plaintiff.
Although the Plaintiff has submitted copies of billings that reflect hours spent on the case and associated costs, an award of attorney's fees, without a proper hearing, is premature. As the Defendants state, portions of the attorney's fees submitted by the Plaintiff may be subject to diminution. Therefore, in an effort to stay consistent with the Agreement, and grant only those fees to the prevailing party which are reasonable, this Court will reserve its judgment regarding the award of attorney's fees until a hearing can be further scheduled. The Corporate Defendants have also submitted a motion to assess attorneys' fees. The Court will also reserve judgment on that motion in conjunction with the Plaintiff's motion for fees and costs.
 Plaintiff's Motion for a New Trial on the Issues of Damages, or, in the Alternative, for Additur
The Plaintiff asserts that the jury's award of damages is not truly responsive to the merits of the controversy, and that a new trial should be granted on the issues of damages, subject to additur. He argues that the breach of contract damages are subject to calculation with exact mathematical precision, and that he is entitled to the entire loss under the contract. Also, the Plaintiff argues that the Corporate Defendants' defense of commercial frustration was not properly raised before or during trial. Moreover, the Plaintiff argues that even if the defense was properly raised, there was insufficient evidence for the jurors to apply the defense. The Agreement, the Plaintiff claims, clearly contemplated different scenarios where he would be paid his full salary. Finally, the Plaintiff states that the jury also found that Struck intentionally interfered with the Plaintiff's contract, yet did not award any damages. That finding, the Plaintiff maintains, is a conclusion that no reasonable juror could make, and warrants a new trial as to damages.
The Corporate Defendants argue that the Plaintiff ignores Florida law regarding commercial frustration and that the issue has already been decided during trial. They note that the Plaintiff himself established the closure of RMC as part of his own case-in-chief. The Corporate Defendants also argue that the jury was not bound by the testimony of the Plaintiff's expert, and that the amount of damages they awarded was not clearly erroneous. Furthermore, the Corporate Defendants argue that the defense of commercial frustration is not an affirmative defense and presents no element of surprise or prejudice towards the Plaintiff.
The Rhode Island Supreme Court has stated that "a damage award may be disregarded by the trial justice and a new trial granted only if the award shocks the conscience or indicates that the jury was influenced by passion or prejudice or if the award demonstrates that the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation to which a party is entitled." Shayer v. Bohan, 708 A.2d 158, 165 (R.I. 1998) (citing Hayhurst v. LaFlammeu, 441 A.2d 544, 547 (R.I. 1982)); Bruno v. Caianiello, 121 R.I. 913,917, 404 A.2d 62,65 (1979). Although it is an "inherent power of a trial court to correct errors of law and of fact which have intervened in the entry of a judgment," no evidence has been presented to this Court that would persuade it to believe the award of the jury was influenced by passion or prejudice or affected by an error of law or fact. See Walker v. St. Laurent,103 R.I. 636, 638 (1968). There was, however, ample evidence presented during trial upon which the jury could have relied on for support of their decision. For instance, just because one party's expert explains damages in a certain manner, it does not automatically follow that the jury has to commit to the figures or calculations. See DiPetrillo v. Dow Chemical Co., 729 A.2d 677 (R.I. 1999) ("it is a matter for the finder of fact to decide what weight to accord the experts testimony.")
Furthermore, this Court is not convinced that commercial frustration is a defense that must be specifically and affirmatively plead. The Corporate Defendants state that they denied the sole averment for contract damages in their answer, and no where in Rule 12 of the Superior Court Rules of Civil Procedure does it state that the defense of commercial frustration must be specifically plead. Moreover, there is no danger of unfair surprise or prejudice to the Plaintiff. Therefore, the Plaintiff's motion for a new trial on the issues of damages, or, in the alternative, for additur, is denied.
 Plaintiff's Motion to Alter or Amend Judgment
The Plaintiff first argues that the judgments entered fail to reflect the appropriate joint and several liability among the various Defendants. The Plaintiff also states that the judgments should incorporate reasonable attorney fees and costs in the same manner. The Corporate Defendants argue that according to the Contribution Among Tortfeasors Act, Rhode Island General Law § 10-6-1, et. seq., the Plaintiff cannot ask this Court to assign joint and several liability to the Defendants. Also, they argue that the Plaintiff cannot pick and choose the Defendants' relationship to best suit his needs. Lastly, the Corporate Defendants state that the jury independently determined liability among the Defendants.
Again, this Court finds the Plaintiff's arguments regarding joint and several liability to hold very little weight. Numerous times during the trial the Corporate Defendants and Struck were portrayed as separate and individual defendants. Furthermore, as stated earlier in this decision, the jury apportioned damages to each Defendant individually according to the facts set forth during trial. The jury assigned damages to each Defendant proportionately according to their degree of fault and involvement in the facts of the case. No evidence has been offered to this Court that has convinced it to disturb those findings, and the high standard for adjusting a jury award has not been reached. See Shayer v. Bohan, 708 A.2d 158 (R.I. 1998); Mazzaro v. Narragansett Imp. Co.,283 A.2d 887 (R.I. 1971). Therefore, the Plaintiff's motion to alter or amend the judgment is denied.
Counsel shall prepare the appropriate order for entry.
[1] Counts III, V, and X have been dismissed.
[2] 18 U.S.C. § 2510(5) states in part:
 "(5) `electronic, mechanical, or other device' means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than — (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties. . . ."
[3] Rhode Island General Law § 9-21-10 states in part:
 "(a) In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein. Post-judgment interest shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein. This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided."
[4] 18 U.S.C. § 2520(c)(2) states: "In any other action under this section, the court may assess as damages whichever is the greater of — (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000."